# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL SARANCHAK,** | : | **CIVIL NO. 1:05-CV-0317** |
| | : | |
| **Petitioner** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, Commissioner,** | : | **THIS IS A CAPITAL CASE** |
| **Pennsylvania Department** | : | |
| **of Corrections;** | : | |
| **DAVID DiGUGLIELMO,** | : | |
| **Superintendent of the State** | : | |
| **Correctional Institution at** | : | |
| **Graterford; and FRANK TENNIS,** | : | |
| **Superintendent of** | : | |
| **the State Correctional Institution** | : | |
| **at Rockview,** | : | |
| | : | |
| **Respondents** | : | |

## M E M O R A N D U M

This matter comes before the court on remand from the United States Court of Appeals for the Third Circuit. The Third Circuit Court's judgment, received by this court on November 24, 2010, directed the court to deny in part Petitioner Daniel Saranchak's petition for writ of habeas corpus with respect to Claims I, II, and III,[1]

---

[1] In a memorandum and order dated January 4, 2008, the court granted Saranchak's habeas petition as to Claims I, II, and III. (Doc. 29.) Those counts are as follows:

> Count I.   Mr. Saranchak was denied his right to the effective assistance of counsel because counsel failed to conduct a constitutionally adequate investigation of the diminished capacity defense.

> Count II.   The admission of Petitioner's statements violated *Miranda*, the trial court

and consider the remaining eight issues in the petition, including issues related to the

penalty phase of the state court proceedings.  (*See* Doc. 33-2.)  As such, the petition is

ripe for disposition.  For the reasons that follow, the petition will be denied.

## I.    <u>Background</u>

Saranchak is challenging his 1994 conviction for first degree murder and related

charges in the Court of Common Pleas for Schuylkill County, Pennsylvania.  The

facts surrounding the events which led to his conviction, as summarized by the

Pennsylvania Supreme Court in *Commonwealth v. Saranchak*, 866 A.2d 292, 296 (Pa.

2005) ("*Saranchak-5*"), are as follows:

> On October 15, 1993, Daniel Saranchak . . . was drinking with a
> friend, Roy Miles (Miles), at Mickey Courtney's Sportsman Bar
> (Courtney's Bar) in Pottsville, Pennsylvania. [Saranchak] told Miles that
> he knew where they could acquire some money, but that they might have

---

> conducted a faulty colloquy, and counsel was ineffective for failing to
> object and failing to litigate the suppression issues at the trial level and on
> appeal.

Count III.  Petitioner's state and federal constitutional rights to counsel and against
self incrimination were violated by the admission of inculpatory
statements allegedly made to a government child services worker, who
questioned him about the offense without notice to his lawyer or advising
him of his rights, and all prior counsel were ineffective for failing to raise
these issues.

(Doc. 7 at 2-3.)

2

to kill someone to obtain it. Thereafter, the two men left the bar and went to [Saranchak's] brother's house. [Saranchak] obtained a .22 caliber rifle from his brother, feigning that he and Miles were going hunting. After leaving his brother's house, [Saranchak] and Miles went to a second bar and purchased two quarts of beer before driving to a residence in Cumbola, Pennsylvania (the Residence) shared by [Saranchak's] 87-year-old grandmother (Grandmother) and his uncle, Edmund Saranchak (Uncle).

Before entering the Residence, [Saranchak] stated that he was going to get some money from Grandmother. [Saranchak] and Miles entered the Residence through an unlocked basement door. Once inside, [Saranchak] walked directly to the sofa in the basement and shot Uncle in the head killing him almost instantly. [Saranchak] rolled Uncle over, while Miles rifled through the victim's pockets stealing his money. [Saranchak] and Miles then went to Grandmother's second floor bedroom. [Saranchak] asked Miles to shoot Grandmother, but he refused. Upon awakening, Grandmother asked, "Danny is that you?" [Saranchak] then fatally shot Grandmother once in the head. [Saranchak] and Miles proceeded to lower the bedroom's blinds and search Grandmother's room for money. They eventually stole some money from Grandmother's purse.[2]

Uncle had a breakfast meeting scheduled with his employer for the next morning. When Uncle failed to appear, his employer went to his home and spoke with a neighbor, who indicated he had not seen either victim since the previous day. Employer and the neighbor decided to enter the home, and upon doing so discovered Uncle's body. They called the police, who responded and found Grandmother's body. After securing the crime scene, police canvassed the neighborhood and questioned neighbors. Based upon the information obtained, police interviewed [Saranchak's] mother who, among other things, told the police that [Saranchak] had "gone shooting" the night before. She also informed police where [Saranchak] was residing. Based upon mother's

---

[2] [Saranchak] and Miles also found a locked safe, but were unable to open it.

information, the police obtained a search warrant for [Saranchak's]
apartment and seized a .22 caliber rifle.[3]

On October 16, 1993, [Saranchak] was taken into custody,
transported to a local police station and twice advised of his
constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86
S.Ct. 1602, 16 L.Ed.2d 694 (1966).  He confessed to killing Uncle, but
denied killing Grandmother.[4]

*Id*.

On September 6, 1994, Saranchak pleaded guilty to two counts of general

homicide.  After a degree of guilt hearing conducted without a jury, the trial court

convicted Saranchak on two counts of first-degree murder, *see* 18 Pa. Cons. Stat. §

2502(a), and all related charges.  The Commonwealth sought the death penalty, and a

jury was selected to determine the appropriate sentence.  After the parties selected a

jury on September 12, 1994, the penalty phase commenced on September 15, 1994.

On September 16, 1994, the jury sentenced Saranchak to death on each conviction of

first-degree murder.  In doing so, the jury found two aggravating circumstances on

each count of murder: (1) that the killing was committed during the perpetration of a

---

[3]  Later testing established that the casings found adjacent to both victims' bodies were
fired from that weapon.

[4]  At some point after his arrest, [Saranchak] also confessed both murders to Laurie
Garber, a Schuylkill Children and Youth Services (CYS) caseworker involved with his children.

felony, and (2) that Saranchak was convicted of another murder committed either before or at the time of the offense.  The jury found no mitigating circumstances.

Saranchak filed a direct appeal to the Pennsylvania Supreme Court, which affirmed his conviction in an opinion dated Apri1 24, 1996.  *Commonwealth v. Saranchak*, 675 A.2d 268 (Pa. 1996) ("*Saranchak-I*").  Saranchak's subsequent petition for writ of certiorari was denied by the United States Supreme Court on January 6, 1997.  *Saranchak v. Pennsylvania*, 519 U.S. 1061 (1997).  He also mounted several unsuccessful collateral attacks of his conviction in the state courts pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541 *et seq.*[5]  Saranchak filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 16, 2005.  (Doc. 7.)  The petition raises eleven issues.  By memorandum and order dated January 4, 2008, the court granted the habeas petition as to the first three claims.  (Doc. 29.)  Respondents appealed to the United States Court of Appeals for the Third Circuit, which reversed the granting of relief on the first three claims and remanded the matter for consideration of the merits of the remaining eight claims.  Those eight claims are as follows:

---

[5]  For a detailed procedural history of this case, see the court's memorandum and order issued on January 4, 2008.  (Doc. 29 at 3-7.)

IV.     Petitioner was denied his constitutional rights to cross examination
        at both the degree of guilt and sentencing hearings when, during
        cross examination, his alleged accomplice refused to answer
        relevant questions, and counsel was ineffective for failing to object
        and for failing to move to strike the testimony.

V.      Mr. Saranchak was denied effective assistance of counsel at capital
        sentencing.

VI.     The trial court unconstitutionally deprived Petitioner of the use of a
        mental health expert; prior counsel were ineffective for failing to
        object and litigate this claim.

VII.    The trial court erred in failing to instruct the jury on the mitigating
        circumstance of extreme mental or emotional disturbance; defense
        counsel was ineffective for failing to object or request an
        appropriate instruction, and for failing to raise this claim on appeal.

VIII.   Petitioner was denied his constitutional rights when the trial court
        improperly excused prospective jurors based upon their views
        concerning the death penalty.

IX.     The trial court's instructions on the nature of aggravating and
        mitigating circumstances unconstitutionally prevented the jury
        from considering and giving full effect to relevant mitigating
        evidence and all prior counsel were ineffective for failing to object
        to the instructions or otherwise raise this issue.

X.      Petitioner was denied his constitutional rights to due process, to a
        fair and impartial penalty phase, to the effective assistance of
        counsel, and against cruel and unusual punishment, when the
        prosecutor engaged in improper argument, where defense counsel
        failed to object at trial or raise the issue on appeal, and where the
        court took no action to cure the error.

XI.   Petitioner is entitled to relief from his conviction and sentence because of the cumulative effect of the errors described in this petition and found in prior proceedings.

(Doc. 7 at 4-5.)  The court will discuss these issues in turn after setting forth the standards of review.

## II.   <u>Standards of Review</u>

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), went into effect and amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254.  A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

7

### A.   Exhaustion and Procedural Default

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  In addition, the doctrine of procedural default bars federal habeas relief when a state prisoner has defaulted on his federal claims in state court pursuant to an independent and adequate state procedural rule.  *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir. 1996).

The court previously addressed exhaustion and procedural default in the memorandum and order dated January 4, 2008.  (Doc. 29 at 8-11.)   In that memorandum, the court determined that Saranchak had satisfied the exhaustion requirement and waived no claims due to procedural default.  (*Id*. at 9, 11.)  Thus, the court need not address exhaustion and procedural default here with respect to the remaining eight claims.

**B.    Merits**

Once a court has determined that the exhaustion requirement is met, and therefore the issues presented in a habeas petition on the merits is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  AEDPA places the burden on the petitioner to make this showing.  *Williams v. Taylor*, 529 U.S. 362 (2000).

In a recently issued opinion, the Third Circuit Court set forth the following description of the framework for analysis required under § 2254(d):

> Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries.  *See, e.g., Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 785, 178 L.Ed. 2d 624 (2011).  The first is whether the state court decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  The second is whether the state court decision "involved an unreasonable application of" such law.  § 2254(d)(1).  And the third is whether the

9

state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. § 2254(d)(2).

The test for § 2254(d)(1)'s "'unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S. Ct. 2456, 162 L.Ed. 2d 360 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520, 123 S. Ct. 2527, 156 L.Ed. 2d 471 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L.Ed. 2d 144 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 75-76, 123 S. Ct. 1166 (quoting *Williams v. Taylor*, 529 U.S. 362, 411, 120 S. Ct. 1495, 146 L.Ed. 2d 389 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. *Andrade*, 538 U.S. at 75, 123 S. Ct. 1166.

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See Rice v. Collins*, 546 U.S. 333, 338-339, 126 S. Ct. 969, 163 L.Ed. 2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing *Miller-El v. Dretke*, 545 U.S. 231, 240 125 S. Ct. 2317, 162 L.Ed. 2d 196 (2005)); *see also Simmons v. Beard*, 590 F.3d 223, 231 (3d. Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by

10

clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. *Cullen v. Pinholster*, — U.S. —, — – —, 131 S. Ct. 1388, 1401-03, 179 L.Ed. 2d 557 (2011).

*Rountree v. Balicki*, 640 F.3d 530, 537-38 (3d Cir. 2011). *See also Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold"). Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F.Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record, or is plainly controverted by the

evidence, should the federal habeas court overturn a state court's factual

determination. *Porter*, 276 F.Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

Relief can only be granted if Saranchak demonstrates that the state court's

decision satisfies one of the three tests set forth above. The merits of the remaining

eight claims presented by Saranchak will now be analyzed in accordance with these

standards.

## III.   <u>Discussion</u>

Saranchak's remaining eight claims involve state court guilt phase and penalty

phase proceedings. Seven of these issues assert ineffective assistance of counsel. For

clarity and for purposes of discussion, the court will address Saranchak's ineffective

assistance claims, as well as his other claim, in chronological order, first setting forth

the standard for ineffective assistance of counsel and then addressing the merits of the

claims. Any other relevant standards will be presented at the time the particular issue

is addressed.

### A.   <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment guarantees an accused in a criminal prosecution the right

to assistance of counsel for his defense. The applicable federal precedent for

ineffective assistance claims is the well-settled two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Wiggins v. Smith*, 539 U.S. at 510, 521 (2003) (setting out the *Strickland* test); *Williams*, 529 U.S. at 390-91 (same). The first prong of the *Strickland* test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688; *Wiggins*, 539 U.S. at 521. It follows that when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief under *Strickland* is not available. *See Strickland*, 466 U.S. at 691 (failure to pursue "fruitless" claims "may not be challenged as unreasonable."); *see also United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999) (stating counsel cannot be deemed ineffective for failing to raise a meritless claim). A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 688-89, 690-92. The question is not whether counsel did not err, but whether counsel exercised the customary skill and knowledge that

13

normally prevailed at the time and place of counsel's conduct.  *Id.*  To that end, a court must conduct an objective review of counsel's performance measured for reasonableness under prevailing professional norms, including a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time.[6]  *Id.* at 686; *Wiggins*, 539 U.S. at 522-27; *see also Bobby v. Van Hook*, — U.S. —, 130 S. Ct. 13, 16-20 (2009).

The second prong of *Strickland* requires a petitioner to show that "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  This standard "is not a stringent one;" it is less

_____

[6]  This standard of review of counsel's performance is a general one.  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."  *Strickland*, 466 U.S. at 688-698.  The Supreme Court has recognized the American Bar Association standards and restatements of professional standards as "guides" as to what is reasonable, but they are "only guides" to the extent they describe the professional norms prevailing when the representation took place.  *Id.* at 688.   These guides should not be so detailed that they "interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Id.* at 689.  Nor shall these guides be an exhaustive list of obligations of counsel or a checklist for judicial evaluation of attorney performance.  *Id.*  The inquiry remains whether counsel's assistance was reasonable considering all of the circumstances.  *Id.* at 687.

demanding than the preponderance standard. *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999). Further, a reviewing court need not determine whether counsel's performance was deficient before considering whether the petitioner suffered any prejudice as a result of the alleged deficiency. *Strickland*, 466 U.S. at 697. If it is easier to dispose of an ineffectiveness claim for lack of requisite prejudice, that course should be followed. *Id.*

In addition, the reviewing court must evaluate counsel's performance in light of the totality of the evidence. *Strickland*, 466 U.S. at 695-96; *see also Jacobs v. Horn*, 395 F.3d 92, 106-07 (3d Cir. 2005). It is the petitioner's burden to establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697; *see also Jacobs*, 395 F.3d at 102.

At the time the state courts reviewed the claims in which it was asserted that Saranchak's counsel was arguably ineffective, *Strickland*'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the *Strickland* test. *See, e.g., Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing

ineffective assistance of counsel claims is not contrary to *Strickland*. *Jacobs*, 395

F.3d at 107 n.9; *Werts*, 228 F.3d at 204.  Thus, under § 2254(d)(1), the relevant

inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is

whether the state court's decision involved an unreasonable application of *Strickland*.

*Jacobs*, 395 F.3d at 107 n.9; *Werts*, 228 F.3d at 204.  Further, under § 2254(d)(2), the

relevant inquiry is whether the state court made unreasonable factual determinations

when deciding whether the petitioner received constitutionally effective counsel.

*Bond v. Beard*, 539 F.3d 256, 279 (3d Cir. 2008).

Finally, Saranchak's claims of ineffective assistance of appellate counsel must

be examined under the same *Strickland* standards cited above: 1) whether counsel's

performance was unreasonable; and 2) whether counsel's unreasonable performance

actually prejudiced the defense.  *Strickland*, 466 U.S. at 687.  If a court finds no merit

in a claim of ineffective assistance by trial counsel, appellate counsel cannot be found

ineffective for failing to raise those same meritless issues on appeal.  *See United States*

*v. Cook*, 45 F.3d 388, 392-93 (10th Cir. 1995) ("When a defendant alleges his

appellate counsel rendered ineffective assistance by failing to raise an issue on appeal,

we examine the merits of the omitted issue.  If the omitted issue is without merit,

16

counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel.") (citations and quotations omitted).

**B.    Claim IV - Failure to Object to and/or Move to Strike the Testimony of Accomplice Miles**

Saranchak contends that he was denied the constitutional right to confrontation when his accomplice, Roy Miles, was permitted to invoke the Fifth Amendment on cross-examination when questioned about the source of a significant amount of money he was seen with after the killings.  Saranchak further argues that his counsel was ineffective for failing to object to Miles' invocation and for not moving to strike the testimony altogether.  For the reasons that follow, habeas relief on this claim will be denied.

The background of this claim is as follows.  Throughout the proceedings before state and federal courts, Saranchak has denied that any specific intent to kill was based on a motive to rob or steal from his grandmother and/or uncle.  (Doc. 18 at 63.)  At the degree of guilt hearing, Saranchak's counsel asserted that any money taken from the house was done so by Miles, not Saranchak.  As a result, Saranchak maintains that a "crucial aspect" of his defense was to challenge Miles' assertions that Saranchak had

told him that "he knew where they could acquire some money, but that they might have to kill someone to obtain it."[7]  *Saranchak-5*, 866 A.2d at 296.

At the degree of guilt hearing, on direct examination Miles indicated that he had pleaded guilty to third degree murder and related charges of robbery, theft, and criminal conspiracy, in connection with the killings.  (Notes of Testimony, Degree of Guilt Hearing, 9/6/1994 ("Guilt NT") 61-62.)  In addition, Miles stated that he had pled guilty to other, unrelated charges of strong arm robbery and possession.  (*Id*. at 62.)  He also asserted on direct that Saranchak told him on the night of the killings, "I know where we can get some [money] but we might have to shoot someone."  (*Id*. at 63.)  The Commonwealth then asked Miles a series of questions establishing that Saranchak had taken his uncle's wallet from the Saranchak house, and that he had attempted to open a safe while there.  (*Id*. at 66-67.)  Additionally, the Commonwealth and Miles had the following exchange:

> [Commonwealth]:        Again, Mr. Miles, my question was, the money
>                        that you had that weekend, other than the
>                        $20.00 you got from Mr. Saranchak, where did
>                        that money come from?

---

[7] At the PCRA hearing, Miles testified that Saranchak did not make this statement, rather the police "told me that I had to testify against Mr. Saranchak at his trial, they said that this is what I had to say when I was asked upon this question."  (Notes of Testimony, PCRA Hearing, 2/11, 19/2003 ("PCRA NT") 213-14.)

| [Miles]: | *The money came from someone else* and I never had any $50.00 bills but the two fifties that I had I got even before I met Danny.  I cashed two fifties for two people that came in to the bar that Ray couldn't cash because he didn't think that he would have enough to make it throughout the night. |
| --- | --- |
| [Commonwealth]: | So you cashed them in the bar previous to that? |
| [Miles]: | Yeah, before I even met Danny. |
| [Commonwealth]: | You didn't get any of that money that you had from the Saranchak house? |
| [Miles]: | No, I didn't. |

(*Id*. at 85-86) (emphasis added).  On cross-examination, when Saranchak's counsel, Kent D. Watkins, Esquire, tried to follow up on that line of questioning, specifically on Miles' statement that the "money came from someone else" and not from the Saranchak house, Miles invoked the Fifth Amendment privilege.  (*Id*. at 86-87.)  The trial court permitted the invocation, and Attorney Watkins was permitted to ask only follow-up questions regarding the details of how Miles cashed the two fifties for people who had entered the bar.  (*Id*. at 87-88.)

At the sentencing hearing before the jury, on direct examination Miles confirmed his guilty pleas to both the offenses related to the killings and the unrelated charges of possession, strong arm robbery, and retail theft.  (Notes of Testimony,

Sentencing Hearing, 9/15-16/1994 ("Sentencing NT") 65.)  He testified again that

Saranchak told him that he knew where to get some money, but that he might have to

shoot someone for it.  (*Id*. at 58.)  Same as at the degree of guilt hearing, the

Commonwealth then asked Miles a series of questions to establish that Saranchak had

taken the wallet from his uncle, and had attempted to open a safe in the house.  (*Id*. at

63-64.)

On cross-examination, Attorney Watkins again asked Miles for the source of

the large amount of money he was seen with on the night of the killings, and Miles

once again invoked his Fifth Amendment privilege.  (*Id*. at 68.)  Miles' counsel stated

to the court, "I believe your Honor is familiar with the basis of his plea of the Fifth as

to this particular issue which is the money and we would ask that that plea of the Fifth

be considered as a blanket plea to any other questions on that issue, that particular

issue."  (*Id*. at 68-69.)  The court agreed, and informed the jury that Miles would be

permitted to claim the right against self incrimination with respect to the source of the

money.  (*Id*.)  Subsequently, Miles further testified as to his recollection of the events

of the night of the killings.  (*Id*. at 70-77.)

As stated above, Saranchak argues that had he been permitted to cross-examine

Miles about the source of the money he had on the night of the killings at the degree

of guilt hearing, he would have been able to refute the Commonwealth's purported

motive for the killings.  He also would have been able to support his defense argument

at the sentencing hearing contesting the existence of the aggravating circumstance of

commission of a killing during the perpetration of a felony (robbery).  In addition, he

contends that counsel was ineffective for failing to move to strike the direct testimony

of Miles.

The Fifth Amendment's self incrimination clause protects two distinct rights:

first, a defendant's right not to take the witness stand at his own criminal trial and,

second, the privilege of any witness, in any formal or informal governmental

proceeding, not to answer questions when the answers might incriminate him.  *Roach*

*v. Nat'l Transp. Safety Bd.*, 804 F.2d 1147, 1151 (10 Cir. 1986).  *See, e.g., United*

*States v. Housing Found. of America*, 176 F.2d 665, 666 (3d Cir. 1949).

As related to the second protection, the witness' privilege against self-

incrimination "not only protects the individual against being involuntarily called as a

witness against himself in a criminal prosecution but also privileges him not to answer

official questions put to him in any other proceeding, civil or criminal, formal or

informal, where the answers might incriminate him in future criminal proceedings."

*Roach*, 804 F.2d at 1151 (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

21

A witness can prevail in his assertion of the privilege only when he has "reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  The claim of privilege cannot be sustained if the fear of self-incrimination rests on "remote and speculative possibilities;" the privilege protects only against "real dangers." *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972).

Further, the confrontation clause of the Sixth Amendment guarantees a criminal defendant the right to cross-examine witnesses against him. *See Douglas v. Alabama*, 380 U.S. 415, 418 (1965).  However, the confrontation clause, while guaranteeing "an *opportunity* for effective cross-examination," does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  If a witness' invocation of his rights under the Fifth Amendment could interfere a defendant's right to cross-examine, the court must ensure that the invocation did not "effectively . . . emasculate the right of cross-examination itself." *Id*. at 19.  Courts often prevent an emasculation of the confrontation right by striking the testimony of a nonrespondent witness. *United States v. McGlory*, 968 F.2d 309, 344 (3d Cir. 1992) (citing *Bagby v. Kuhlman*, 932 F.2d 131, 135 (2d Cir.), *cert. denied*, 502 U.S. 926 (1991).

In some instances, a defendant's Sixth Amendment right to confrontation will be denied as a result of a witness' invocation of his Fifth Amendment privilege against self-incrimination. *Bagby*, 932 F.2d at 135. However, "the Sixth Amendment is violated only when assertion of the privilege undermines the defendant's opportunity to test the truth of the witness' direct testimony." *Id*. As stated by the Second Circuit Court of Appeals,

> To reconcile a defendant's rights under the confrontation clause with a witness' assertion of the fifth amendment privilege, a court must initially consider: (1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony. *See Dunbar* [*v. Harris*, 612 F.2d 690, 692-3 (2d Cir. 1979);] *see also Klein* [*v. Harris*, 667 F.2d 274, 289 (2d Cir. 1981)]. If the court determines that the privilege has been invoked with respect to a collateral matter, or that the invocation does not preclude inquiry into the witness' direct testimony, then the defendant's right to cross-examine has not been impinged and no corrective action is necessary. Conversely, the sixth amendment is violated when a witness asserts the privilege with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony. To remedy such a violation, the court must determine whether the witness truly waived the privilege by testifying on direct examination. *Klein*, 667 F.2d at 287-88; *see also Brown v. United States*, 256 U.S. 148, 154-57, 78 S. Ct. 622, 626-28, 2 L. Ed.2d 589 (1958). If the privilege is deemed to have been waived, the court should compel the witness to respond to the defense's cross-examination. *Klein*, 667 F.2d at 289; [*United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963)]. On the other hand, if the privilege has not been waived, or if the witness simply refuses to testify, the witness' direct testimony should be stricken in whole or in part. *Klein*, 667 F.2d at 289; *Cardillo*, 316 F.2d at 611.

23

*Bagby*, 932 F.2d at 135 (emphasis in original).  Further, the Third Circuit Court of

Appeals has "recognized that reversible error, on Sixth Amendment grounds, may

occur where the witness' testimony "add[s] critical weight to the prosecution's case in

a form not subject to cross-examination."  *McGlory*, 968 F.2d at 344 (quoting *Todaro*

*v. Fulcomer*, 944 F.2d 1079, 1084-85 (3d Cir. 1991)).

Turning to the instant case, the Pennsylvania Supreme court addressed this

claim in *Saranchak-5*.  *See Saranchak-5*, 866 A.2d at 302-03.  After setting forth the

standard by which a trial judge must determine whether a witness may properly

invoke a claimed Fifth Amendment privilege, and citing to both state and federal law,

the court determined that the underlying claim lacked arguable merit.  Specifically, the

court found,

> Notwithstanding [Saranchak's] contentions, Miles clearly had every right
> to invoke his Fifth Amendment privilege against incriminating himself in
> a different criminal enterprise, and availing himself of that right provided
> no basis for a motion to strike.  [Saranchak] fails to cite any legal
> authority that states that counsel could move to strike merely because
> Miles invoked his Fifth Amendment right on cross-examination.  As
> such, this assertion lacks arguable merit and fails the first prong
> articulated in *Pierce*.

*Saranchak-5*, 866 A.2d at 303.

Upon review, the court concludes that the state courts' determination regarding

this issue is consistent with federal law and is based on a reasonable determination of

24

the relevant facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Miles was fully examined, on both

direct and cross examination, about his involvement with Saranchak in the killings.

Further, it is clear that Miles testified on direct examination that he had a certain

amount of money on him on the night of the killings that was not related to the events

of this case.  He did not, however, reveal the source of this money.  On cross-

examination, Miles invoked his Fifth Amendment privilege when asked about the

source of the money.  The trial court permitted Miles to assert the privilege only on

this topic, as it was collateral to the subject matter of the trial because the source of the

money came from a different and unrelated criminal act.[8]  *See United States v. Brooks*,

82 F.3d 50, 54 (2d Cir. 1996) (citing *Cardillo*, 316 F.2d at 611 ("If a witness asserts

the privilege on cross-examination regarding 'collateral' matters, the witness' direct

testimony need not be stricken.").  As such, Miles only declined to respond to the

inquiry into the source of the money.  The court is not persuaded by Saranchak's

argument that any testimony by Miles about the source of the money would have

tended to disprove Miles' direct testimony.  In fact, Miles' assertion of the privilege in

these circumstances did not "preclude[ ] inquiry into the details of his direct

---

[8]  At the 2003 PCRA hearing, Miles stated that the money came from a different theft
and that he would have testified to such at the degree of guilt phase if so required.  *See Saranchak-5*,
866 A.2d at 303 n.13.

testimony" nor "deprive [Saranchak] of the right to test the truth of his direct

testimony." *Cardillo*, 316 F.2d at 161.  Inasmuch as Miles' testimony should not have

been stricken, counsel cannot be faulted for his failure to move to strike it.  As such,

this claim does not warrant habeas relief.  *See* 28 U.S.C. § 2254(d)(1)-(2). Moreover,

as the court has determined that Saranchak's claim with respect to Miles invoking the

Fifth Amendment is meritless, his ineffective assistance of counsel claim also fails.

*See Strickland*, 466 U.S. at 691 (reasoning counsel's performance cannot be deficient

based on a failure to advance meritless claims).

### C.   Claim V - Ineffective Assistance of Counsel at Capital Sentencing

Saranchak challenges his death sentence on the grounds that counsel was

ineffective for failing to investigate and present mitigating evidence relating to his

background.  For the reasons that follow, habeas relief on this claim will be denied.

### I.   Background

#### a.   Sentencing Hearing

At the sentencing hearing, the Commonwealth presented the testimony of the investigating officers, Saranchak's accomplice, Roy Miles, and the child services caseworker who had interviewed Saranchak shortly after his arrest.

In his opening statement to the jury, Saranchak's counsel, Kent Watkins, Esquire, stated, "I want you to listen about the evidence concerning intoxication or mental infirmity or character which are mitigating factors." (Sentencing NT 9/15/94 , at 23.)  During testimony, Attorney Watkins presented six mitigation witnesses on behalf of his client.  None of these witnesses testified as to Saranchak's childhood or schooling.  Julian Spirko, Saranchak's neighbor, testified that he had been with Saranchak on the day of the killings, but when he saw him later in the evening in at Courtney's Bar, "[he] wasn't happy-go-lucky and all . . . and he was like in a daze or something by himself there." (*Id*. at 94.)  He also stated, "You could tell his eyes looked glassy eyed and you could almost tell he had drink in him." (*Id*. at 95.)  Carol Frantz, Saranchak's girlfriend, testified that when Saranchak was not drinking, "He's polite.  He'll do anything for you," and took care of his children. (*Id*. at 100.)  She also testified that when Saranchak was drinking, he would pretend to be an army sergeant and tell her to obey his commands. (*Id*.)  Delmar Phillips, a sheriff with the Schuylkill County Sheriff's Department who transported Saranchak to and from the

prison to the courthouse during the proceedings, testified that Saranchak was very cooperative and caused no problems or disruptions.  (*Id*. at 102-03.)  Jim Steiner, another neighbor, testified that he had been driving with Saranchak earlier in the evening of the killings.  (*Id*. at 105-08.)  Saranchak, who was driving, stopped at a cemetery and went to a grave and talked to the headstone.  (*Id*. at 107.)  Steiner did not hear what he was saying.  (*Id*.)  James Swantek, a supervisor at the Schuylkill County Prison where Saranchak was confined during the proceedings, testified that Saranchak was a "normal inmate," not creating any problems or disturbances.  (*Id*. at 110.)

Finally, Dr. Stefan Kruszewski, the psychiatrist who evaluated Saranchak for competency prior to the guilt phase, testified.  (*Id*. at 117-29.)  He stated that Saranchak was polite during the evaluation and took full responsibility for the murders.  (*Id*. at 124, 126.)  In answering a question about how Saranchak's alcohol consumption on the day of the murders may have affected him, he stated, "It is very hard to predict an answer to that.  We have one previous psychiatric hospitalization when Mr. Saranchak was 21 years of age when his reason for admission was a significant suicide attempt."  (*Id*. at 123.)  He also stated that Saranchak was of slightly below normal intelligence.  (*Id*. at 125.)  Finally, reading from his report, he stated that Saranchak "has no major psychiatric diagnosis or any mental disability,

28

that's mental retardation in this case, which would prevent him from comprehending

the ability to defend himself with the help of his counsel." (*Id*. at 127-28.)

During his closing argument to the jury, Attorney Watkins made the following

statements with respect to the mitigating circumstances involved in this case:

> Now, the character of the defendant is a question in mitigation just as you look at him and everything around him and yourself in the individual way. Look at him as an individual. One of the mitigating circumstances is sort of a catch-all about the character and manner and type of person the defendant is. Well, one of the first things we in this first part of protecting society and seeking justice and I want to bring to your attention in this particular case if that Mr. Saranchak confessed. He did not clam up. He did not blame it on anyone else at any time. He told a psychiatrist. He told the social worker. He came in to court of his own volition and said I did it. It's been often said that confession is good for the soul. Does it show something about the character? There was an incident . . . .

* * *

> He came to this point knowing that when he confessed it was only, and came and pled guilty, there was only two alternatives. Life in jail or death in the electric chair. So knowing that, he comes in and confesses. What else do we know about his character? He was remorseful. The Doctor said he was honest and remorseful. He has not been a person who is swaggered and brag. Not someone who has denied. He is a person who said I did it and I'm responsible and I take that responsibility.

* * *

> Now, back to some of the character about the defendant. He's the . . . The woman who is the mother of his child said he helps with the children. He . . . . The children love him. The Sheriffs Department, the

29

people in the prison, say he's no problem.  He's never . . . .   There is no indication that he has ever been a problem.  When he talked to these people that day that he was with, there was no indication that he disliked his uncle or his grandmother.  There was slight indication that afterwards he said to the social worker that he didn't like his uncle but there was no indication.  He had been helping his grandmother and he had been drinking and he had gone and loaded and he had been drinking and he was at the bar and he had been drinking.  At some point after he had unloaded something with Mr. Steiner, he stopped by his father's grave and was talking at his father's grave.  I don't know.  I'm not . . . .  There is no evidence, no indication - - I'm not a psychiatrist - - if this had some affect [sic] on his future actions but again, I'm not here to argue or make excuses for the crime.

* * *

Now, the mitigating circumstances I have described to some extent how Mr. Saranchak is.  When he's not drinking, his girlfriend said he would do anything for anybody.  He was not a bad guy.  Now, I'm not asking you . . . .  There is nothing here.  He's not getting off.  I'm not making a plea to let him off.  The alternatives are life imprisonment without possibility of parole or the death sentence.  You either have to lock the door or pull the switch.

* * *

The mitigating circumstances, the law, under the law are alcohol affecting not his ability to . . . .  As I said, it's not to be innocent or guilty.  It's disinhibiting and I weighed that . . . .  Why I say mitigation there is because of Mr. Saranchak, what he's like when he's not drinking and he's not drinking obviously anymore and he never will drink anymore, but he's a nice guy generally.  He's nice to his family.  All of those things but this is disinhibiting and something snapped and this happened.  That's a mitigation, not to say that he's not guilty but to say that life imprisonment is more appropriate.  Also, the other factor is the factors in his character which I have told you.  About the confession.  About . . . .

30

He's even helped out at the prison knowing what his circumstances are. He's been a model prisoner.  He can remain a model prisoner for the rest of his life in the monotonous day-to-day of prison.  Is that more appropriate to eliminate him completely?  Obliterate him.  For you to decide that he should no longer exist.  As I said, the law in Pennsylvania and justice requires that he be given the life sentence.

(*Id*. at 153-57; 163-64.)

At the end of testimony and closing arguments, the trial court charged the jury with the following aggravating circumstances: (1) that the defendant committed a killing while in the perpetration of a felony, and (2) that the defendant has been convicted of another murder committed either before or at the time of the offense at issue.  (*Id*. at 169, 170.)  In addition, the court charged the jury with the following mitigating circumstances: (1) that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and (2) any other evidence of mitigation concerning the character and record of the defendant and the circumstance of his offense.  (*Id*. at 171, 172.)  After deliberations, the jury found both aggravating circumstances and no mitigating circumstances.  Accordingly, the jury returned with a sentence of death, as required by Pennsylvania law under the circumstances.  *See* 42 Pa. Cons. Stat. § 9711(c)(1)(iv) ("[T]he verdict must be a sentence of death if the jury unanimously

finds at least one aggravating circumstance specified in subsection (d) and no

mitigating circumstance[.].")

<b>b.   PCRA proceedings</b>

At the PCRA proceedings conducted in 2003,[9] Saranchak, represented by new

counsel, presented the testimony of Attorney Watkins, who had represented him at

trial and through direct appeal.  (Notes of Testimony, PCRA Hearing, 2/13, 19/2003

("PCRA NT") 67-116.)  Attorney Watkins could not recall his strategy with respect to

the sentencing hearing.[10]  (PCRA NT 112-13.)  He tried to get biographical history

from Saranchak himself, but Saranchak only intermittently gave him limited

information.  (*Id*. at 86.)  He did not specify the nature of this information.  (*Id*.)  He

also spoke with Linda Troup, Saranchak's mother, and Carol Frantz, Saranchak's

girlfriend, but could not recall what information he obtained.  (*Id*. at 86-7, 88.)  In

addition, he could not recall if he obtained any detailed background information from

Saranchak's family, including his schooling, upbringing, criminal record, and prior

medical and psychiatric history.  (*Id*. at 87.)  However, he recalled having in his

---

[9]  The Commonwealth presented no witnesses at the PCRA hearing.

[10]  In answer to the question as to what was his strategy for the sentencing phase, Attorney Watkins stated, "Well to try to avoid the death penalty."  (PCRA NT 113.)  When counsel pointed out that this response was a goal rather than a strategy, Attorney Watkins stated that he could not recall his strategy.  (*Id*. at 113-14.)

32

possession prior to sentencing Dr. Kruszewski's report which indicated Saranchak had

a prior hospitalization for a suicide attempt.[11]  (*Id*. at 86.)  When asked if he was

relying solely on Saranchak's memory in terms of developing evidence about his

background, Attorney Watkins stated,

> I know I asked people about his background, about him as a youth.  I
> asked I believe his mother and maybe some other people who knew him.
> He used to - - I think I asked the neighbors and some other people who
> knew him . . . as a child and that sort of thing.  But I don't recall what
> they said.  I can sort of picture this.

(*Id*. at 93.)  Finally, Attorney Watkins indicated that prior to the sentencing hearing,

he knew nothing of Saranchak's childhood mental illness or abuse history.  (*Id*. at 90,

92.)  He testified that if he had known of this history, he would have presented it as

mitigation.  (*Id*.)

In addition to the testimony of Attorney Watkins, Saranchak presented a

number of other witnesses who testified as to mitigating evidence.  Harry D. Krop,

Ph.D., a licensed clinical psychologist who conducted a forensic psychological

---

[11]  This report also indicated that Saranchak had previous problems with the legal system, including several incarcerations and parole violations; had attended the Intermediate Unit #29 at the Marlin Center in Pottsville, Pennsylvania; had a prior psychiatric hospitalization; had a significant history of substance abuse and drug abuse; had a history of impulsivity, particularly under the influence of alcohol; and had a history of acting in an antisocial manner.  (Guilty Plea, 9/1/94, Ex.)  In that report, Dr. Kruzsewski also diagnosed Saranchak with, *inter alia*, a personality disorder, not otherwise specified, with anti-social traits, and severe to extreme psychological stressors.  (*Id*.)

evaluation of Saranchak for the PCRA proceedings after meeting with him twice in

1997 and reviewing his background,[12] diagnosed Saranchak with adult attention

deficit disorder; atypical pervasive developmental disorder in childhood;

polysubstance abuse, chronic; depressive disorder, not otherwise specified ("NOS");

and, personality disorder, NOS, with paranoid and anti-social features, or a delusional

disorder. (*Id*. at 12-14, 16.) He referenced that Saranchak's parents divorced when he

was two years old, that Saranchak's father was an abusive alcoholic who had been in

jail, and that his mother had been treated for nerves and depression. (*Id*. at 19.) He

also recounted that because of Saranchak's developmental disorder, he was placed in

special education classes in third or fourth grade. (*Id*. at 24.) He further observed that

when Saranchak was intoxicated, "sometimes there was a blurring of fantasy and

reality in terms of his militaristic lifestyle that he almost perceived himself truly to be

in the military and on a mission." (*Id*. at 28.) As a result of this background, Dr. Krop

noted the following mitigating evidence with respect to Saranchak's behavior: "a

chronic psychiatric disturbance;" "chronic polysubstance abuse;" a "dysfunctional

family situation" due to physical abuse, alcohol abuse, and domestic violence; an

---

[12] Attached as an exhibit to the PCRA proceedings is an affidavit of Dr. Krop, confirming his PCRA testimony and containing as attachments Saranchak's medical, educational and institutional records documenting Saranchak's mental health, family and educational background. (PCRA NT, Ex., Aff. H. Krop, Attach.)

34

"ability to function well in a highly structured environment such as a prison setting in general population;" and "general remorse" for the crimes he committed.  (*Id*. at 38-40.)  Based on these diagnoses, he concluded that, at the time of the murders, Saranchak's "capacity to appreciate the criminality of what he was doing and to conform his conduct to the law was substantially impaired."[13]  (*Id*. at 41.)

Dr. Kruzsewski also testified.  As stated above, at the time of trial, Dr. Kruzsewski was court-ordered to evaluate Saranchak for competency.  At the PCRA proceedings, he testified that Attorney Watkins gave him no background information on Saranchak, but that he did not need such information for his competency evaluation.  (*Id*. at 165-66.)  Further, Attorney Watkins never asked him to investigate mitigation evidence.  (*Id*. at 166.)  However, after reviewing Saranchak's history in preparation for the PCRA proceedings, Dr. Kruzsewski concluded that Saranchak had "severe psychiatric manifestations when drinking," and was suffering from the psychotic effects of alcohol at the time of the murders.  (*Id*. at 180-81.)  Based on these conclusions, Dr. Kruzsewski determined that Saranchak's capacity to appreciate

---

[13]  Dr. Krop also testified that Saranchak was suffering from an extreme mental or emotional disturbance at the time of the murders.  (PCRA NT 183.)  The court addresses Saranchak's issue with respect to this mitigating circumstance at Section III.E., *infra*, pp. 57-65.

the criminality of his conduct and to conform his conduct to the requirements of the law was substantially impaired.[14]  (*Id*. at 182.)

Saranchak also presented testimony of various family members.  Dennis Troup, Saranchak's step-father, testified that Saranchak and his half-brothers "didn't have it bad when they were little," but that Saranchak had lived in an abusive home with his natural father until he was approximately one-year old.  (*Id*. at 138.)  However, Saranchak had minimal exposure to his natural father after that time.  (*Id*. at 142.)  He also testified that Saranchak had to be moved to a special school as a child because he was "hyper and fidgety all the time, like I mean bothering other people."  (*Id*. at 129.)  Further, Saranchak started drinking when he was a teenager, and the drinking got worse over the years.  (*Id*. at 130.)  Keith Troup, Saranchak's half-brother, testified that when Saranchak was not drinking he was a "good guy," but when drinking, he was "out of hand."  (*Id*. at 147.)  He recalled Saranchak's militaristic talk when he was drinking.  (*Id*.)  He also recalled Saranchak trying to commit suicide and resultantly being temporarily committed to a mental hospital.  (*Id*. at 149-50.)  Finally, John Troup, Saranchak's other half-brother, testified that Saranchak developed a bad

---

[14]  Dr. Kruzsewski also testified that Saranchak was suffering from an extreme mental or emotional disturbance at the time of the murders.  (PCRA NT 40-41.)  The court addresses Saranchak's issue with respect to this mitigating circumstance at Section III.E., *infra*, pp. 57-65.

attitude and sometimes used militaristic talk when he was drinking.  (*Id*. at 156-57.)

All of these family members testified that they were never contacted by defense

counsel to testify at the sentencing hearing, but would have been willing to testify had

they been called.  (*Id*. at 135, 151, 158.)

Saranchak also submitted several affidavits in support of his claims.  David

Reichert, a special education teacher at the Marlin Center in Pottsville, Pennsylvania,

declared that Saranchak had been one of his students in the Socially & Emotionally

Disturbed ("SED") program for approximately two years in 1983 and 1984.  (PCRA

NT, Ex., Aff. D. Reichert.)  At that time, Saranchak was "mentally and emotionally

disturbed."  (*Id*.)  He "had trouble dealing with his emotions, and often exhibited an

inappropriate affect and mood.  He displayed a great deal of dysfunctional behavior."

(*Id*.)  Further, Saranchak's problems grew worse as his time went on at the Marlin

Center.  (*Id*.)  John Sutter, a special education teacher with the Schuylkill County

Intermediate Unit #29, declared that Saranchak was one of his students in 1980.

(PCRA NT, Exs., Aff. J. Sutter.)  At that time, Saranchak "was a disturbed child who

needed very much the added structure and emotional support of the 'SED' program."

(*Id*.)  Also, Joseph Szeliga, Saranchak's probation officer for two years until

Saranchak's arrest for the killings, declared that Saranchak had a history of serious

psychological problems and alcoholism.  (PCRA NT, Exs., Aff. J. Szeliga.)  At some

point in his past, Saranchak had attempted suicide and almost died from a drug

overdose.  (*Id*.)  All three affiants declared that defense counsel never spoke with them

prior to sentencing, but all would have been willing to testify on behalf of Saranchak.

(PCRA NT, Exs. Affs. D. Reichert; J. Sutter; J. Szeliga.)

### c.    State Court Decisions

Both the PCRA court and the Pennsylvania Supreme Court addressed this

ineffectiveness claim.  The PCRA court rejected the ineffectiveness claim based on

the prejudice prong of the *Strickland* standard.  *See Commonwealth v. Saranchak*, No.

889, 889A-1993 (Pa. D. & C. July 8, 2003) (Doc. 28, Ex. B.).  However, in its review

of the claim, the Pennsylvania Supreme Court instead found that the underlying claim

had no arguable merit, and therefore did not reach the prejudice prong of *Strickland*.

*See Saranchak-5*, 866 A.2d at 304.  In doing so, the supreme court deemed the PCRA

court's analysis of the arguable merit and reasonable basis prongs of the

ineffectiveness standard "cursory and conclusory."  *Id*. at 304 n.14.

In rejecting the claim, the Pennsylvania Supreme Court first found the

following,

> In pursuit of mitigating evidence, counsel spoke with [Saranchak] at
> length and also interviewed [Saranchak's] mother and girlfriend seeking

38

information.  Eventually counsel called six mitigation witnesses, including the girlfriend, another friend, a neighbor, the psychiatrist who conducted the competency evaluation, [Saranchak] principal prison supervisor, and the deputy who transferred [Saranchak] from prison to the courtroom in an effort to mitigate his conduct. [Saranchak's] counsel introduced evidence of his general positive character, his alcohol consumption on the night of the murders and his remorsefulness of the crime.

During the hearing before the PCRA court, counsel testified that neither [Saranchak], his mother nor his girlfriend provided him with any information that went unused at the penalty phase hearing.  Furthermore, according to counsel, no one informed him of [Saranchak's] abusive upbringing, dysfunctional family or any childhood mental illness.  To the contrary, counsel testified that had he been informed of this information, he would have used it in mitigation.

*Id*. at 303-04.  Citing to both state and federal law, the court concluded as follows:

Applying the objective standard enunciated in *Strickland*, we find no ineffectiveness on trial counsel's behalf.  He interviewed [Saranchak], his mother and his girlfriend.  He sought out relevant information from [Saranchak's] family and we do not perceive that he should have done more in this regard.  The second prong of *Pierce* is satisfied if counsel's strategic decision was premised upon all of the information he had available to him.  An evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decision cannot be based upon the distorting effects of hindsight.  *See Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 735 (2000) citing *Strickland*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984).

*Id*.  The court also added:

*[A]t the time* of the penalty hearing, counsel was not privy to [Saranchak's] background information as cited by the dissent because [Saranchak] and his family failed to provide counsel with such

39

information, which is a specific requirement of *Strickland*. Against, as
can be derived by the U.S. Supreme Court decision in *Basemore*, this
Court must be careful not to hold counsel responsible for information
which became available in hindsight.

*Id*. at 304 n.14 (emphasis in original).

### d.    Analysis

As stated above, Saranchak contends that counsel was ineffective for failing to

investigate and present mitigating evidence relating to his background.  The court will

examine both prongs of the *Strickland* test in its disposition of this claim.

### 1.    Deficient Performance

A counsel's failure to make a reasonable investigation of a defendant's

psychiatric history and family background, and to present mitigating evidence to the

judge or jury at sentencing, can constitute ineffective assistance.  *Wiggins v. Smith*,

539 U.S. 510, 522-23 (2003).  "[C]ounsel has a duty to make reasonable

investigations or to make a reasonable decision that makes particular investigations

unnecessary."  *Id.* at 521(quotation marks omitted).  As stated recently by the Third

Circuit Court of Appeals,

this duty to conduct a reasonable investigation of mitigating evidence
exists independently of counsel's duty to present a mitigation case to the
jury.  In fact, the former is a necessary predicate to the latter: if counsel
has failed to conduct a reasonable investigation to *prepare* for sentencing,
then he cannot possibly be said to have made a reasonable decision as to

40

> what to *present* at sentencing.  As such, "our principal concern in
> deciding whether [counsel] exercised 'reasonable professional judgment'
> is not whether counsel should have presented a mitigation case.  Rather,
> we focus on whether the investigation supporting counsel's decision not
> to introduce mitigating evidence of [the defendant's] background *was*
> *itself reasonable*." [*Wiggins*, 539 U.S. at 522-23 (citation and brackets
> omitted)].

*Blystone v. Horn*, 664 F.3d 397, 420 (3d Cir. 2011) (emphasis in original).  Where a

jury in a capital case has been precluded from hearing mitigating evidence concerning

the defendant's character or background because counsel has made an objectively

unreasonable decision not to look for it, counsel's performance violates the dictates of

*Strickland.  See Rompilla v. Beard*, 545 U.S. 374, 380-81 (2005); *Wiggins*, 539 U.S. at

519-34; *Outten v. Kearney*, 464 F.3d 401, 417 (3d Cir. 2006); *Marshall v. Cathel*, 428

F.3d 452, 469 (3d Cir. 2005); *Laird v. Horn*, 159 F. Supp. 2d 58, 112 (E.D. Pa. 2001),

*aff'd on other grounds*, 414 F.3d 419 (3d Cir. 2001).

Further, in assessing the reasonableness of an attorney's investigation, the

quantum of evidence known to counsel must be considered, as well as whether that

evidence should have led a reasonable attorney to investigate further.  *Wiggins*, 539

U.S. at 527.  Further, in assessing counsel's investigation, the court must conduct an

objective review of his performance measured for reasonableness under prevailing

professional norms, including a context-dependent consideration of the challenged

41

conduct as seen from counsel's perspective at the time.  *Id.* at 522-27 (quoting

*Strickland*, 466 U.S. at 688-89) (internal quotations omitted); *see also Bobby v. Van*

*Hook*, - - U.S. - - , 130 S. Ct. 13, 16-20 (2009).  The Third Circuit Court of Appeals

has explained that it is "only the rare claim of ineffective assistance of counsel that

should succeed under the properly deferential standard to be applied in scrutinizing

counsel's performance."  *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997)

(quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).

Further, counsel in capital cases are under an obligation to understand the

fundamental shift in their duties once their client has been found guilty and a

sentencing hearing begins:

> The existence of a penalty phase in capital trials makes such trials
> radically different from ordinary criminal trials.  A full capital trial is in
> fact two separate but intimately related trials: a preliminary guilt trial
> focusing on issues pertaining to the commission of a capital offense, and
> a subsequent penalty trial about the convicted defendant's worthiness to
> live.  The guilt trial establishes the elements of the capital crime.  The
> penalty trial is a trial for life.  It is a trial for life in the sense that the
> defendant's life is at stake, and it is a trial about life, because a central
> issue is the meaning and value of the defendant's life.

*Marshall v. Hendricks*, 307 F.3d 36, 99 (3d Cir. 2002) (citation omitted).  "The

penalty phase focuses not on absolving the defendant from guilt, but rather on the

production of evidence to make the case for life.  The purpose of the investigation is

42

to find witnesses *to help humanize* the defendant, given that the jury has found him guilty of a capital offense." *Id*. at 103 (emphasis in original). Reasonable counsel should recognize that "death is different," *see Marshall*, 428 F.3d at 467, and that a person facing the death penalty has a constitutionally protected right to have available mitigating evidence presented on his behalf, *Williams*, 529 U.S. at 393 (stating that the petitioner "had a right - indeed, a constitutionally protected right - to provide the jury with the mitigating evidence that his trial court either failed to discover or failed to offer").

As set forth above, in *Saranchak-5* the Pennsylvania Supreme Court addressed and rejected this claim based on a finding of no deficient performance by counsel. *See Saranchak-5*, 866 A.2d at 303-04. As such, AEDPA's standard of review applies to this prong of the *Strickland* test. *See* 28 U.S.C. § 2254(d). In applying this standard, the court is mindful that a federal habeas court is deferential to the merits determinations made by a state collateral relief court. 28 U.S.C. § 2254(d), (e); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).[15] Furthermore, as stated recently by

---

[15] Under 28 U.S.C. § 2254(d)(2), a factual determination made by a state court should be adjudged as unreasonable only if the district court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. § 2254(d)(2); *Porter*, 276 F. Supp. 2d at 296. Under 28 U.S.C. § 2254(e), a petitioner may only rebut the presumption that a state court's findings of fact are corret with clear and convincing evidence of the state court's error. § 2254(e)(1); *Miller-El*, 537 U.S. at 341.

the United States Supreme Court, "when § 2254(d) applies, the question is not

whether counsel's actions were reasonable.  The question is whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."

*Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 788 (2011).

Turning to the state court's interpretation and application of *Strickland*'s

performance prong, the court concludes that there is no reasonable argument to sustain

the state court's determination that Saranchak's attorney satisfied *Strickland*'s

deferential standard with respect to investigating mitigating evidence.  "[I]nvestigation

is essential to the lawyer's duties as both advisor and advocate."  *Blystone*, 664 F.3d at

419 (citing 1 ABA Standards for Criminal Justice 4-4.1 (2d ed. 1980)).  "[C]ounsel's

general duty to investigate takes on supreme importance to a defendant in the context

of developing mitigating evidence to present to a judge or jury considering the

sentence of death."  *Hendricks*, 307 F.3d at 99 (quotation marks omitted).  Counsel

must make sufficient "efforts to discover all reasonably available mitigating evidence

and evidence to rebut any aggravating evidence that may be introduced by the

prosecutor."  *Wiggins*, 539 U.S. at 524.  "Information concerning the defendant's

background, education, employment record, mental and emotional stability, family

relationships, and the like, will be relevant." *Blystone*, 664 F.3d at 420 (quoting 1

ABA Standards, *supra*, 4-4.1).

In this case, the Pennsylvania Supreme Court found that counsel's actions were

"strategically reasonable given the information he had available to him." *Saranchak-*

*5*, 866 A.2d at 304.  In so finding, the court noted that counsel had interviewed

Saranchak, his mother and his girlfriend, and had sought out information relevant to

the mitigating circumstances from Saranchak's family.  *Id*.  According to the state

court, it "d[id] not perceive that he should have done more in this regard."  *Id*. at 304.

Counsel introduced the evidence he received from Saranchak and his family members,

as well as the testimony of the doctor charged with determining only Saranchak's

competency to stand trial.  *Id*.  This evidence related to his general positive character,

his alcohol consumption on the night of the murders, and his remorsefulness.  *Id*. at

303-04.

The court also noted that "according to counsel, no one informed him of

[Saranchak's] abusive upbringing, dysfunctional family or any childhood mental

illness.  To the contrary, counsel testified that had he been informed of this

information, he would have used it in mitigation."  *Id*.  Upon our review of the record,

however, the court believes that the state court's reliance on counsel's assertions here

45

was objectively unreasonable in light of the evidence before it.  From a review of the evidence presented by Attorney Watkins at sentencing, it is plain that Attorney Watkins should have been aware of the following mitigating evidence prior to sentencing: (1) Saranchak had a long history of alcohol abuse that caused his personality to fluctuate severely between "good guy" and "out of hand;" (2) Saranchak displayed delusional behavior in the form of believing he was in the military; and (3) Saranchak had previously attempted suicide.  Furthermore, Dr. Kruzsewski's report on Saranchak's competency should have alerted Attorney Watkins to the following issues: (1) Saranchak had previous problems with the legal system, including several incarcerations and parole violations; (2) Saranchak had attended the Intermediate Unit #29 at the Marlin Center in Pottsville, Pennsylvania; (3) Saranchak had a prior psychiatric hospitalization; and (4) Saranchak had a history of acting in an antisocial manner.  Any of this evidence should have prompted counsel to further investigate Saranchak's background, specifically with an emphasis on his

upbringing and mental health for mitigation purposes.[16]  Instead, counsel interviewed

only Saranchak, his mother and his girlfriend, and stopped there.[17]

 While counsel did present at sentencing the psychiatrist who evaluated

Saranchak prior to trial, as previously stated, this doctor's evaluation, court-ordered

prior to degree of guilt hearing, was limited solely to Saranchak's competency to stand

trial.  As noted by the Third Circuit Court of Appeals, "[i]t is beyond cavil that the

scope of an evaluation for purposes of mitigation at a capital sentencing proceeding is

far broader than that for competency at trial." *Blystone*, 664 F.3d at 421 (citing

*Commonwealth v. Basemore*, 744 A.2d 717, 738 n.24 (Pa. 2000); *Blanco v.*

*Singletary*, 943 F.2d 1477, 1503 (11th Cir. 1991)).  Despite having that report from

Dr. Kruzsewski prior to the guilt phase of the trial, Attorney Watkins did not seek Dr.

Kruzsewski's expert opinion (or any other expert's opinion for that matter) on any

---

[16]  Although not considered by the state courts, the court is aware that with a conviction on the murder and robbery counts in hand as a result of the degree of guilt hearing, it is reasonable to assume that Attorney Watkins knew that Saranchak would be subject to the statutory aggravating circumstances that the defendant "committed a killing while in the perpetration of a felony" and "has been convicted of another murder committed either before or at the time of the offense at issue." *See* 42 Pa. Cons. Stat. § 9711(d)(6), (11).  Being aware of the possibility of a jury finding such aggravating circumstances, and in light of Pennsylvania law on the weighing of aggravating and mitigating circumstances and what is required of a jury should it find no mitigating circumstances, presumably counsel would not want to limit his investigation into mitigating evidence to three interviews of lay witnesses.

[17]  Attorney Watkins' statement at the PCRA hearing that he asked for Saranchak's background from "maybe some other people who knew him," (PCRA NT 93), is not supported by the record.

possible mitigating evidence.  In light of the available evidence, the court believes that competent counsel would have requested the appointment of an expert for an independent mental health evaluation relating to mitigating evidence.

Moreover, there is nothing in the record indicating that counsel's limited investigation was the result of the type of reasoned tactical decision to which this court owes deference under *Strickland*.  To that end, at the PCRA hearing, even though counsel expressly stated that it was his goal to avoid the death penalty, he could not recall any strategy he had with respect to presenting mitigating evidence at sentencing.  In fact, counsel's testimony as a whole makes it clear that he did not perform an investigation adequate to provide the foundation for a reasoned strategic choice as to which avenues of potentially mitigating evidence to seek out.  *See Blystone*, 664 F.3d at 423 (citing *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) ("[C]ounsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made.")).

As the Third Circuit Court did in *Blystone*, this court recognizes that "[t]he right to counsel does not require that a criminal defense attorney leave no stone and no witness unpursued." *Blystone*, 664 F.3d at 423 (quoting *Jermyn v. Horn*, 266 F.3d

48

257, 308 (3d Cir. 2001) (alteration in original) (quotation marks omitted)).  However, the Sixth Amendment "require[s] a reasoned judgment as to the amount of investigation the particular circumstances of a given case require."  *Jermyn*, 266 F.3d at 308; *see also Strickland*, 466 U.S. at 691.  From a review of the record in this case, it is clear that counsel's limited investigation was not the result of any such reasoned judgment, "but was merely the consequence of lackluster performance."  *Blystone*, 664 F.3d at 423.  Stated otherwise, "counsel chose to abandon the[ ] investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible."  *Wiggins*, 539 U.S. at 527-28.

In sum, viewing the record as a whole, including evidence introduced at sentencing and in the later PCRA proceedings, the court concludes that there is no reasonable argument to sustain the Pennsylvania Supreme Court's decision that counsel's actions were reasonable in light of the available information.   Furthermore, there could be no disagreement among "fairminded jurists" that the state court's decision was incorrect.  *Harrington*, — U.S. —, 131 S. Ct. at 786 ("[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  As such, the state

49

court's application of *Strickland* here was objectively unreasonable.  *See* 28 U.S.C. §
2254(d)(1).  Also, the state court decision involved an unreasonable determination of
the facts in light of Saranchak's demonstration of clear and convincing evidence to the
contrary.  *See* 28 U.S.C. § 2254(d)(2), (e).

## 2.   Prejudice

However, the court's inquiry into effectiveness of counsel does not end there.
Having found deficient performance, this court must now question whether Saranchak
was prejudiced by his counsel's failure to investigate and present mitigating evidence
at the sentencing phase of the trial.[18]  In any death penalty case in Pennsylvania, the
jury's decision on the death penalty must be unanimous.  *Jermyn v. Horn*, 266 F.3d
257, 308 (3d Cir. 2001).  Accordingly, a petitioner can satisfy the prejudice prong if
he can show that the presentation of the available mitigating evidence would have
convinced even one juror to find that the mitigating factors outweighed the
aggravating factors.  *Id*.  Therefore, this court must weigh the totality of the mitigating
evidence that could have been presented at trial with the aggravating evidence that
was presented and determine whether, "had the jury been confronted with this . . .

---

[18]  Because the Pennsylvania Supreme Court did not reach the merits of the prejudice
prong, the deferential AEDPA standard of review does not apply.  Instead, the court will review this
portion of Saranchak's claim *de novo*.  *Porter v. McCollum*, — U.S. —, 130 S. Ct. 447, 452 (2009).

mitigating evidence, there is a reasonable probability that it would have returned with

a different sentence." *Wiggins*, 539 U.S. at 534, 536.

Applying these principles, the court finds that a sufficient showing has not been

made that the outcome of the penalty phase of Saranchak's trial would have been

different.  Here, the mitigating evidence at issue relates to Saranchak's childhood

mental health and abuse history.  Had counsel's investigation not been deficient, the

jury could have heard expert testimony regarding Saranchak's background such as "a

chronic psychiatric disturbance;" "chronic polysubstance abuse;" and a "dysfunctional

family situation" due to physical abuse, alcohol abuse, and domestic violence.  These

experts would have told the jury that, at the time of the murders, Saranchak was

suffering from a substantially impaired capacity to conform his conduct to the law.

From additional lay witnesses, the jury would have heard: (1) Saranchak lived in an

abusive home until he was approximately one-year old; and, (2) he attended a special

education school as a child for several years due to his dysfunctional behavior.

Importantly, however, through the testimony presented at sentencing, the jury *did* hear

the following: (1) Saranchak had a severe drinking problem accompanied by

personality changes while drinking; (2) when drinking Saranchak would speak as if he

was in the military; (3) on the night of the murders he had stopped at his father's grave

and spoken to it; (4) he had attempted suicide in the past; (5) he was of slightly below normal intelligence; and (5) he had no major psychiatric diagnosis or mental disability such as retardation.  Further, the jury also heard: (1) Saranchak was a "good guy" when not drinking; (2) he took care of his children and was good to them; (3) he admitted to the murders and was remorseful; and (4) as an inmate, he was cooperative and not disruptive.  Moreover, in reviewing Attorney Watkins' closing argument, inarticulate though it may have been, it is apparent that he was forcefully arguing for a finding of the two possible mitigating circumstances of "the capacity of the defendant to appreciate this criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired," and the evidence falls within the parameters of mitigation "concerning the character and record of the defendant and the circumstances of his offense."  He did have the testimony of an expert, Dr. Kruzsewski, and several lay witnesses to speak to those mitigators at sentencing.

The court is not persuaded that the introduction of the evidence presented at the PCRA hearing "might well have influenced [at least one juror's] appraisal of [Saranchak's] moral culpability."  *Williams*, 429 U.S. at 398.  The United States Supreme Court has stated that "'evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants

52

who commit criminal acts that are attributtable . . . to emotional and mental problems,

may be less culpable than defendants who have no such excuse.'" *Penry v. Lynaugh*,

492 U.S. 302, 319 (1989) (quoting *California v. Brown*, 479 U.S. 538, 545 (1987)).

In this case, the jury did, in fact, hear evidence of Saranchak's background, including

emotional and mental problems.  Therefore, the court concludes that Saranchak has

not demonstrated a reasonable probability that the result of his sentencing hearing

would have been different, had counsel presented additional evidence after conducting

a more thorough investigation of mitigating circumstances.  As such, habeas relief on

this claim will be denied.  However, the court will grant Saranchak a certificate of

appealability on this claim.  (*See supra*, p. 80-81.)

> **D.** **Claim VI - Trial Court Failure to Appoint Defense Mental Health Expert; Ineffective Assistance of Counsel for Failing to Object and Litigate**

Next, Saranchak challenges his death sentence on the grounds that the trial

court violated his due process rights when it failed to appoint a defense mental health

expert to address Saranchak's mental state at the time of the offense and any relevant

mitigating evidence.  He also claims that counsel was ineffective for failing to secure

the appointment of such a defense expert.  For the reasons that follow, the court need

not address this claim with respect to Saranchak's mental state at the time of the

offense, as it has been previously adjudicated.  Further, Saranchak is not entitled to

habeas relief on the claim with respect to mental health expert testimony as mitigating

evidence because this claim is duplicative of Claim V addressed above.  *See supra* pp.

26-53.

In its January 4, 2008 memorandum and order, this court determined that this

claim was, in part, duplicative of Saranchak's Claim I, namely that counsel was

ineffective for failing to conduct a constitutionally adequate investigation of the

diminished capacity defense.  (Doc. 29 at 18 n. 14.)  The court granted relief as to

Claim I, but on appeal, the Third Circuit Court of Appeals reversed.  *See Saranchak v.

Beard*, 616 F.3d 292 (3d Cir. 2010).  Specifically, the Third Circuit court found that

Saranchak easily met the deficient performance prong of *Strickland*, but he was not

prejudiced by counsel's performance due to the ample evidence of Saranchak's

specific intent to murder both victims.  *Id*. at 308-14.  Further, as to the expert

testimony presented in support of a diminished capacity defense, the Court reasoned:

> In this case, both experts who testified at the PCRA stage presented a
> thorough evaluation of Saranchak's mental health.  Yet Dr. Krop's
> testimony did not satisfy the legal requirements of a diminished capacity
> defense under Pennsylvania law, and Dr. Kruszewski's abbreviated

> reference that Saranchak is depressed when he drinks is the only portion
> of his testimony that was relevant to the defense.  Neither could explain
> away Saranchak's stated intent to obtain money, his retrieval of the gun,
> his deliberate method of committing the murders, or his admitted motive
> for doing so.

*Id*. at 314.  As a result, the Court concluded, "After a thorough review of not only the

testimony of Dr. Krop and Dr. Kruszewski, but the entire PCRA record and degree of

guilt hearing record, we conclude that there is not 'a reasonable probability that,

absent the errors' made at the degree of guilt hearing, a rational, objective factfinder

following the directive just quoted 'would have had a reasonable doubt respecting

[Saranchak's] guilt' of first degree murder."  *Id*.  In so concluding, the Court

determined that the expert testimony was irrelevant to the diminished capacity issues.

Because the Third Circuit has already concluded that Saranchak is not entitled to

habeas relief on his claim that counsel was ineffective for failing to present proper

diminished capacity evidence, the court need not address that part of the instant claim.

Turning to Saranchak's claim that the trial court failed to appoint a defense

mental health expert to address any relevant mitigating evidence, the court also finds

this claim to be duplicative of Claim V, addressed above.  Moreover, in *Saranchak-5*,

the Pennsylvania Supreme Court also found this issue duplicative.  *Saranchak-5*, 866

A.2d at 305.  Specifically, the court stated:

> This issue is merely a restatement of [Saranchak]'s initial contention of ineffectiveness of trial counsel for failing to obtain prior school, mental health and hospital records.  The only distinction between the arguments is that the initial one was phrased in terms of a failure to obtain the records, and the instant one is framed in terms of failure to obtain an independent expert to evaluate and comment on those records.  We find it unnecessary to evaluate this argument again, and instead hold that i[t] fails because, for all the reasons set forth *supra*, even assuming *arguendo* the records would have been obtained and an independent psychiatrist retained, the end result of this case would have been no different.

*Id.*[19]  In so concluding, the state court referenced its prior conclusion that the Commonwealth had established beyond a reasonable doubt that Saranchak had the specific intent to kill, and therefore Saranchak suffered no prejudice by not properly presenting a diminished capacity defense.  *Id.* at 300-01.  The same reasoning applies to mitigation, as found in the court's disposition of Claim V above.  Thus, because the court addressed that claim above, it need not address the claim again here.

---

[19]  In its opinion denying the PCRA petition, the PCRA court stated,

The Defendant contends that he was unconstitutionally deprived of the use of a mental health expert and that counsel was ineffective for failing to object.  Even assuming that this claim has arguable merit, and that Attorney Watkins had no reasonable basis for failing to object to the court's order limiting Dr. Kruszewski's examination, our resolution of the previous allegations of ineffectiveness related to the presentation of the diminished capacity defense and mitigation evidence compels the conclusion that the Defendant has not shown prejudice resulting from that failure.

(Doc. 28 at 20.)

**E.** **Claim VII - Trial Court Failure to Instruct Jury on the Mitigating Circumstance of Extreme Mental or Emotional Disturbance; Ineffective Assistance of Counsel for Failing to Object and Litigate**

Saranchak also challenges his death sentence on the grounds that his Eighth and Fourteenth Amendments rights were violated when the trial court failed to instruct the jury on the mitigating circumstance of extreme mental or emotional disturbance. More specifically, he contends that trial counsel was ineffective for failing to use evidence of record to persuade the trial court to instruct the jury on that mitigator. Further, he argues that counsel was ineffective for failing to object or request the instruction, and for failing to raise this claim on appeal. For the reasons that follow, habeas relief on this claim will be denied.

The Supreme Court has long recognized the importance which mitigating evidence plays in ensuring that a capital trial is at once consistent and principled but also human and sensible to the uniqueness of the individual. *See Eddings v. Oklahoma*, 455 U.S. 104, 110-11 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). The Court has further held that the Eighth and Fourteenth Amendments require that the sentencer not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. *Peterkin v. Horn*, 176 F.

Supp. 2d 342, 378 (E.D. Pa. 2001) (citing *Penry v. Lynaugh*, 492 U.S. 302, 317

(1989)).

The Pennsylvania death penalty statute sets forth the trial court's obligations to

provide instructions to the jury on the statutory mitigating circumstances.

Specifically, the statute states, in part, "the court shall instruct the jury on . . . the

mitigating circumstances specified in subsection(e) as to which there is some

evidence."  42 Pa. Cons. Stat. § 9711(c)(1)(ii).  Where there is some evidence to

support one of the statutory mitigators, the trial court must instruct the jury on that

circumstance.  *Saranchak-5*, 866 A.2d at 305 (citing *Commonwealth v. Frey*, 475

A.2d 700, 704 (Pa. 1984)).

In this case, the trial court instructed the jury as to the following aggravating

and mitigating circumstances.  First, as to the aggravating circumstances, the trial

court set forth the following: "[t]hat the defendant committed a killing while in the

perpetration of a felony, [and] . . . [t]hat the defendant has been convicted of another

murder committed either before or at the time of the offense at issue."  (Sentencing

NT 9/15/94 at 169, 170.)  Second, as to the mitigating circumstances, the trial court

set forth the following: "[t]hat the capacity of the defendant to appreciate the

criminality of his conduct or to conform his conduct to the requirements of law was

substantially impaired, [and] . . . [a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." (*Id*. at 171, 172.)  The latter mitigating circumstance is known under Pennsylvania law as the "catchall" mitigator, as it relates to *any* evidence regarding a defendant's character and record, as well as the circumstances of the offense.  *See* 42 Pa. Cons. Stat. § 9711(e)(8).

In the instant petition, Saranchak argues that the trial court erred in failing to instruct the jury on the mitigating circumstance that he was "under the influence of extreme mental or emotional disturbance," 42 Pa. Cons. Stat. § 9711(e)(2).  He claims that the following evidence presented to the jury would have supporting a finding of this mitigating circumstance:

> Various police officers had testified that, at the time he admitted the shooting, [Saranchak] suddenly went into a bizarre, militaristic state, in which he responded to the officers' questions by insisting that, at the time of the shooting, he had been "on a mission" and that the "information was classified." NT 9/15/94 at 38, 39, 42, 49, 51, 52.  Laurie Garber testified that [Saranchak] told her that "he just snapped." *Id*. at 81. Julian Spirko, who was with [Saranchak] several hours prior to the shooting, testified that [Saranchak] "was like in a daze or something" and that he "looked glassy eyed." *Id*. at 94-95.  Jim Steiner, who had been with [Saranchak] the evening of the shooting, testified that while they were driving around drinking, [Saranchak] drove to the cemetery where his father was buried, went over to the grave, and talked to the headstone. *Id*. at 107.

(Doc. 7 at 74-75.)  Saranchak further asserts that even without psychiatric testimony in support of this mitigator, this evidence would have supported a jury's finding that Saranchak was under the influence of extreme mental or emotional disturbance.  (*Id*. at 75.)  Moreover, he claims that trial counsel was ineffective "in simply throwing in the towel on the mitigator" when he agreed with the trial court that he had produced no psychiatric evidence in support of the mitigator, and resultantly it was not presented to the jury for consideration.  (*Id*. at 75-76) (citing Sentencing NT 9/15/94 at 132).

The Pennsylvania Supreme Court considered this issue in *Saranchak-5*, and concluded that the trial court had not erred in refusing to give the instruction on this mitigating circumstance because the evidence did not support it.  *See Saranchak-5*, 866 A.2d at 305-06.  Specifically, the court stated that it agreed with the Commonwealth's argument that the jury was not precluded from considering the evidence as a mitigating circumstance pursuant to the catchall provision of 42 Pa. Cons. Stat. § 9711(e)(8).  As stated above, that section sets forth that mitigating circumstances shall include, "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."  42 Pa. Cons. Stat. § 9711(e)(8).  In addition, the court stated, in part,

> [Saranchak] was examined for competency by a psychiatrist at the time
> of trial.  At no point did the psychiatrist testify that [Saranchak] was
> extremely mentally or emotionally disturbed when he committed these
> murders.  While [Saranchak] certainly had a history of mental health
> difficulties and alcoholism, and was most probably under the influence of
> alcohol when these murders occurred, these concerns are distinct from
> "extreme mental or emotional disturbance."

*Saranchak-5*, 866 A.2d at 305-06.  In a footnote, the court also noted the following:

> [A]fter an exhaustive search, there appears to be no case or statute that
> specifically defines the term "extreme mental or emotional disturbance."
> Regardless, in the case *sub judice*, there was no psychiatric testimony that
> [Saranchak] suffered from psychiatric deficiencies.  The only testimony
> presented related to [Saranchak's] intoxication on the night in question.
> Therefore, we need not reach the definition of "extreme mental or
> emotional disturbance" here.

*Id*. at 306 n.16.  As a result, the court concluded that Saranchak had failed to establish

the first prong of Pennsylvania's ineffectiveness of counsel standard, namely that

there is no arguable merit to the claim.  *Id*. at 306.

Because the Pennsylvania Supreme Court did consider whether counsel was

ineffective for failing to object or request the instruction, the court will review this

claim using the deferential AEDPA standard.  *See* 28 U.S.C. § 2254(d).  Upon review

of the entire record of this case, including testimony and the jury instructions as a

whole, the court concludes that the Pennsylvania Supreme Court's determination that

this issue has no merit withstands AEDPA's standard of review.  The state court's

holding rests in part on the appropriate factual determination that the evidence presented, psychiatric or otherwise, did not speak to whether Saranchak was extremely mentally or emotionally disturbed at the time of the murders. *See* 28 U.S.C. § 2254(d)(2). Further, Saranchak has not established by clear and convincing evidence that the trial court's finding is incorrect. *See* 28 U.S.C. § 2254(e)(1). Rather, the evidence confirmed, as the state court stated, his "mental health difficulties and alcoholism." *Saranchak-5*, 866 A.2d at 305. Because the jury was free to consider Saranchak's "mental health difficulties and alcoholism" under the umbrella of the catchall provision of 42 Pa. Cons. Stat. § 9711(e)(8), Saranchak has not shown here that the absence of the (e)(2) mitigating circumstance violated his federal constitutional rights, or that he was prejudiced by his counsel's decision not to raise an objection at trial or on appeal. As such, the state court's decision is not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

Even assuming *arguendo* that the jury instructions were incorrect, habeas relief is not warranted. The question for consideration in evaluating an allegedly erroneous jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62,

72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The instruction is

considered in the context of the instructions as a whole and the trial record, *Cupp*, 414

U.S. at 147, and reviewed to determine "whether there is a reasonable likelihood that

the jury has applied the challenged instruction in a way" that violates the Constitution,

*Boyde v. California*, 494 U.S. 370, 380 (1990).

Saranchak has not met this standard here.  Again, the instructions as a whole

and the rest of the record confirm that the jury was free to consider any mitigating

evidence under the catchall provision of 42 Pa. Cons. Stat. § 9711(e)(8).  Further, the

evidence presented, psychiatric or otherwise, does not show that Saranchak was

extremely mentally or emotionally disturbed at the time of the killings; rather that he

was, as the Third Circuit has characterized him, "a very troubled man who carried

with him baggage of a troubled past."  *Saranchak v. Beard*, 616 F.3d 292, 313 (3d Cir.

2010).  Thus, Saranchak has not demonstrated that there is a reasonable likelihood that

the jury applied the instructions in a way that violates his constitutional rights.

In sum, viewing the instructions as a whole, the court concludes that the

Pennsylvania Supreme Court's decision is not contrary to, or an unreasonable

application of, clearly established federal law.  *Id*. § 2254(d)(1).  Moreover, as the

court has determined that Saranchak's claim is meritless, his ineffective assistance of

counsel claim also fails.  *See Strickland*, 466 U.S. at 691 (reasoning counsel's

performance cannot be deficient based on a failure to advance meritless claims).

However, the court will grant Saranchak a certificate of appealability on this claim.

(*See supra*, pp. 80-81.)

### F.    Claim VIII - Trial Court's Excusing Prospective Juror Based on Her Views Concerning the Death Penalty

Saranchak challenges his death sentence on the grounds that his Sixth, Eighth,

and Fourteenth Amendment rights were violated when he was tried by a jury that was

improperly death-qualified.  He argues that one venireperson, Joan Myers, was

improperly excused for cause during voir dire.  For the reasons that follow, habeas

relief on this claim will be denied.

In *Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968), the United States Supreme

Court held that a sentence of death cannot be carried out if the jury that imposed it was

chosen by excluding potential jurors for cause simply because they voiced general

objections to the death penalty or expressed conscientious or religious scruples against

its infliction.  *Id.*  The question of whether a venireperson is biased has traditionally

been determined by the voir dire process culminating in a conclusion by the trial judge

as to the venireperson's state of mind.  *Wainwright v. Witt*, 469 U.S. 412, 428 (1985).

In *Uttecht v. Brown*, 551 U.S. 1 (2007), the Supreme Court asserted that its precedents

had established at least four principles of relevance with respect to jury selection:

> First, a criminal defendant has the right to an impartial jury
> drawn from a venire that has not been tilted in favor of capital
> punishment by selective prosecutorial challenges for cause.
> Second, the State has a strong interest in having jurors who are
> able to apply capital punishment within the framework state
> law prescribes.  Third, to balance these interests, a juror who
> is substantially impaired in his or her ability to impose the
> death penalty under the state-law framework can be excused
> for cause; but if the juror is not substantially impaired, removal
> for cause is impermissible.  Fourth, in determining whether the
> removal of a potential juror would vindicate the State's interest
> without violating the defendant's right, the trial court makes a
> judgment based in part on the demeanor of the juror, a
> judgment owed deference by reviewing courts.

*Id*. at 9 (citations omitted).  The Court further found that "[d]eference to the trial court

is appropriate because it is in a position to assess the demeanor of the venire, and the

individuals who compose it, a factor of critical importance in assessing the attitude

and qualifications of potential jurors."  *Id*. (citing *Darden v. Wainwright*, 477 U.S.

168, 178 (1986); *Witt*, 469 U.S. at 428).  A trial judge's finding that a juror is

impermissibly biased is a factual finding entitled to a presumption of correctness

under 28 U.S.C. § 2254(e)(1).  *See Darden*, 477 U.S. at 175; *Patton v. Yount*, 467 U.S.

1025 (1984).  Saranchak has the burden of rebutting the presumption of correctness by

clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

In the instant case, Saranchak bases this claim on the following voir dire of one potential juror, Joan Myers, which he claims was insufficient to justify her excusal for cause.  Initially, it is noted that the trial court began the jury selection process as to Myers, as well as all potential jurors, by explaining the circumstances under which the death penalty could be imposed in this case. (Notes of Testimony, Jury Selection, 9/12/94 ("Jury NT") 158).  The trial court also had the following exchange with Myers:

| [Trial Court]: | If the evidence required it, would you be able to return a verdict of life imprisonment? |
| --- | --- |
| [Myers]: | Yeah, I probably.  Yeah, life in prison. |
| [Trial Court]: | I'm not asking you to decide the case now.  I'm just saying if the evidence required it in your mind, if after you heard all the evidence and you retired to the jury room and talked it over and you were of the opinion that the defendant should be sentenced to life imprisonment, could you, could you return a verdict of life imprisonment? |
| [Myers]: | Yes. |
| [Trial Court]: | And if the evidence requires in your mind that the defendant should receive the death penalty, could you return a verdict of the death penalty? |
| [Myers]: | I really believe I could if I heard the circumstances. |

(Jury NT 158-59.)  After the court's inquiry, the prosecutor questioned Myers.  The prosecutor initially pointed out to Myers that she was hesitating in answering questions, made a face, and answered without much conviction.  (*Id*. at 159-60.)  Her reply was, "Well, I really think it would probably be hard.  I'm sorry.  I don't believe."  (*Id*. at 160.)  She did, however, state that she had no "religious, moral, or personal reservations that would make it difficult for [her], if not impossible, to impose the death penalty."  (*Id*.)  The prosecutor then followed up on the issue of what Myers meant when she said is would be "hard."  (*Id*.)  She responded by stating, "I guess . . . I guess . . . I don't think that I can make that decision."  (*Id*.)  The prosecutor then asked, "You don't believe you could make the decision itself?  That's the problem?"  (*Id*.)  Myers responded, "No, I think it would bother me.  So I better . . . ."  (*Id*.)  At that point, the prosecutor moved for Myers to be stricken for cause, over the objection of defense counsel.  (*Id*.)  The trial court then questioned Myers again for clarification:

> [Trial Court]:    That if the evidence so required it, you could return
> either of those two verdicts.  Is that still your answer?
> That if the evidence required it, you could return a
> verdict on the death penalty and if the evidence
> required it, you could return a verdict of life
> imprisonment?  You're going to hear a lot of evidence
> before you make up your mind.  So I'm asking you to
> decide something in a vacuum here.

[Myers]:                Right.  I'd rather not be on.

(*Id*. at 161.)  On the basis of her answers, the court, over defense counsel's objection,

granted the prosecutor's motion to excuse her for cause.  (*Id*. at 161-62.)

Saranchak raised this issue on direct appeal before the Pennsylvania Supreme

Court.[20]  *See Saranchak-1*, 675 A.2d at 274.  In denying this claim as to Myers, noted

by the court as "Juror #4," the court focused on the following exchange:

> Juror #4 - Question: You said it would be hard.  Could you explain that?
> Answer: "I guess I . . . don't think I can make that decision."  Question:
> "You don't believe that you could make the decision itself?  Is that the
> problem?"  Answer: "No, I think it would bother me."

*Id.*  Based on the record and this exchange in particular, the court concluded:

> The record reveals an ample basis for the trial court's findings that
> [Myers] would have been, as a result of [her] preconceived beliefs or
> attitudes, "substantially impaired" in the performance of [her] dut[y] as
> juror[ ].  Therefore, the trial judge did not abuse its discretion in
> excluding [Myers].  Thus, [Saranchak]'s claim is meritless.

*Id*.

In the instant petition, Saranchak argues the trial court erred in excusing Myers

based on her preference as to whether she would be would like to serve as a juror in a

---

[20]  On direct appeal, Saranchak raised this claim with respect to six potential jurors,
including Joan Myers.  *See Saranchak-1*, 675 A.2d at 274.  Because he does not challenge the other
five potential jurors in the instant habeas petition, the court need only consider this issue with
respect to Myers.

capital case.  However, the record reflects that the answers to the questioning by both the prosecutor and the trial court assured the trial court of Myer's true position that she would not be able to properly serve as a juror in this capital case.  Further, the trial court afforded Saranchak and the prosecutor the opportunity to assure themselves of the true position of Myers by posing additional questions to her for clarification.  The court recognizes that "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Witt*, 469 U.S. at 425-26.  Further, the question of a challenge for bias is a factual issue and, consequently, a trial court's decision is entitled to a presumption of correctness.  *See id.*  Here, Saranchak has not established by clear and convincing evidence that the trial court's finding is incorrect.  *See* 28 U.S.C. § 2254(e)(1).  Viewing the record of the voir dire in its entirety, the court concludes that the Pennsylvania Supreme Court acted reasonably in finding that the trial court's decision to exclude Myers was proper.  *See id*. § 2254(d)(2).  In addition, the state court's decision is not contrary to, or an unreasonable application of, clearly established federal law.  *Id*. § 2254(d)(1).

> **G.** **Claim IX - Trial Court's Instructions on Aggravating and Mitigating Circumstances; Ineffective Assistance of Counsel for Failing to Object and Appeal**

Saranchak challenges his death sentence on the grounds that his Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court improperly instructed the jury on aggravating and mitigating circumstances.  For the reasons that follow, habeas relief on this claim will be denied.

The question for consideration in evaluating a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The instruction is considered in the context of the instructions as a whole and the trial record, *Cupp*, 414 U.S. at 147, and reviewed to determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution, *Boyde v. California*, 494 U.S. 370, 380 (1990).

In the instant case, at the conclusion of the sentencing phase, the trial court provided the following definition of aggravating and mitigating circumstances in its instructions to the jury:

> You are soon to decide whether the sentence that the defendant will receive should be death or life imprisonment.  Your sentence will depend upon what you find about aggravating and mitigating circumstances.  The Sentencing Code of Pennsylvania defines aggravating and mitigating circumstance.  *They are things that make a first degree murder case either more terrible or less terrible*.  Your verdict must be the sentence of

death, must be the sentence of death, if you unanimously - - that is, if all of you - - find at least one aggravating circumstance and no mitigating circumstance or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances.  If you do not all agree on one or the other of these findings, then the only verdict that you may return is a sentence of life imprisonment.

(Sentencing NT 166-67) (emphasis added).  The trial court repeated this statement when discussing the verdict slips with the jury.  (*Id*. at 167.)  Further, the trial court provided further instruction on mitigating circumstances:

If you find by a preponderance of the evidence that the defendant, that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired or the second possible mitigating circumstance would be anything else that you found in the evidence, any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.  Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.  If you find either of those by a preponderance of the evidence, then you will have found that there are mitigating circumstances.

(*Id*. at 171-72.)

Saranchak argues that the portion of the instruction that states that aggravating and mitigating circumstances are things that make a first degree murder case either "more terrible or less terrible" improperly focused the jury's deliberations on how "terrible" his "murder case" was, thereby restricting the jury's consideration of his mitigating evidence that did not affect the "terribleness" of the offense.  He also

71

claims that his counsel was ineffective for not objecting and not litigating the alleged error.

The Pennsylvania Supreme Court denied this claim in *Saranchak-1*. *See Saranchak-1*, 675 A.2d at 276-77. In its decision, the court first noted that Saranchak omitted the further instruction regarding mitigating circumstances and focused only on the "terrible" language. *Id.* at 276. Then, citing both state and federal law, the court concluded:

> Clearly, this instruction *did* instruct the jury that it could consider [Saranchak]'s character as mitigating evidence. Further, evaluating the charge as a whole, this Court finds that the jury was appropriately informed that in order to find mitigating circumstances the jury must determine that evidence existed showing [Saranchak]'s character was impaired in some way as to diminish his capacity to appreciate his criminal behavior.[1] Moreover, this instruction is in conformity with the Pennsylvania Suggested Standard Criminal Jury Instructions and specifically addresses the constitutional requirements outlined in *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S. Ct. 1078, 108 L. Ed.2d 255 (1990) (the jury must be allowed to consider and give effect to all relevant mitigating evidence and the types of mitigating evidence must not be unduly limited). Thus, [Saranchak]'s argument is meritless.

*Id.* at 276-77.

Upon review, the court concludes that the Pennsylvania Supreme Court's adjudication of this issue survives federal habeas review under AEDPA, 28 U.S.C. § 2254(d). Considering the context of the instructions as a whole, Saranchak has not

shown that there is a reasonable likelihood that the jury applied the challenged instructions in a way that violates the Constitution.  *See, e.g., Estelle*, 502 U.S. at 72; *Boyde*, 494 U.S. at 380.  There was no error in the language Saranchak challenges. The language did not restrict or divert the jury from focusing on his personal culpability to whether his case was "terrible."  *See Stevens v. Beard*, 701 F. Supp.2d 671, 736-36 (W.D. Pa. 2010) (concluding a jury instruction that aggravating and mitigating circumstances are "things that make a first degree murder case either more terrible or less terrible" do not violate the petitioner's Eighth Amendment rights). Instead, the trial court was explaining generally to the jury the role of mitigating and aggravating circumstances in a capital case.  The trial court's instruction as a whole conveyed to the jury that it was to consider any aspect of the defendant's character, background, or record that could justify imposing a life sentence.  Viewing the instructions as a whole, the court concludes that the Pennsylvania Supreme Court's decision is not contrary to, or an unreasonable application of, clearly established federal law.  *Id*. § 2254(d)(1).  Moreover, as the court has determined that Saranchak's claim with respect to this instruction is meritless, his ineffective assistance of counsel claim also fails.  *See Strickland*, 466 U.S. at 691 (reasoning counsel's performance cannot be deficient based on a failure to advance meritless claims).

**H.    Claim X - Prosecution's Argument at Capital Sentencing; Ineffective Assistance of Counsel for Failing to Object and Appeal**

Saranchak contends that he is entitled to a new sentencing proceeding because the prosecutor in the case violated his constitutional rights by engaging in improper argument during his opening statement and closing argument.  He also asserts that his counsel was ineffective for failing to object to the statements and to appeal based on the statements.  For the reasons that follow, habeas relief on this claim will be denied.

Improper statements by a prosecutor do not in and of themselves require reversal, but must be analyzed on a case-by-case basis pursuant to the harmless error doctrine.  *United States v. Zehrbach*, 47 F.3d 1252, 1267 (3d Cir. 1995).  "The harmless error doctrine requires that the court consider an error in light of the record as a whole, but the standard of review depends on whether the error was constitutional or non-constitutional."  *United States v. Gambone*, 314 F.3d 163, 177 (3d Cir. 2003) (quoting *Zehrbach*, 47 F.3d at 1265).  Non-constitutional error is harmless when it is highly probable that the error did not contribute to the judgment.  *Id*. (quoting *Zehrbach*, 47 F.3d at 1265).  High probability, on the other hand, requires that the court possess a sure conviction that the error did not prejudice the defendant.  *Id*. (quoting *Zehrbach*, 47 F.3d at 1265).  If the error was unconstitutional, the court may

74

affirm only if the error was harmless beyond a reasonable doubt.  *Id*. (citing *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir. 1996).

The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In making this determination, a court must examine the prosecutor's statements in context to determine their probable effect on the jury's ability to judge the evidence fairly.  *United States v. Young*, 470 U.S. 1, 11-14 (1985). Stated otherwise, the arguments of counsel must be judged in the context in which they were made, bearing in mind that arguments of counsel carry less weight with a jury than do instructions from the court.  *Boyde v. California*, 494 U.S. 370, 384 (1990).  For example, a conviction will not be overturned on the grounds of prosecutorial statements where the prosecutor's comments were "invited" by defense counsel's improper statements, and went no further than necessary to "right the scale" of justice or to "neutralize" the defense's remarks.  *Young*, 470 U.S. at 12-13.  Further, habeas relief is not available simply because the prosecutor's comments were undesirable or even universally condemned.  *Darden*, 477 U.S. at 180-81; *Donnelly*, 416 U.S. at 643; *Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir. 2002).

75

In the instant case, Saranchak contends that at the penalty phase the prosecutor made several statements during his opening statement and closing argument that rendered the penalty phase unconstitutional and unfair.  Specifically, he asserts that the prosecutor (1) told the jury that Roy Miles had made a prior statement which was consistent with his anticipated testimony, despite the prosecutor knowing that the prior statement was inadmissible, (2) told the jury that Miles would testify that Saranchak's grandmother, prior to being shot, asked Saranchak, "Danny, why do you have that gun?", despite the prosecutor knowing that Miles never attributed this statement to her, and (3) told the jury that Saranchak's statements to the police corroborated Miles' testimony that they had gone to the house to commit a robbery, despite the prosecutor knowing that Miles' statement was uncorroborated.  The cumulative effect of these arguments, Saranchak argues, violated his constitutional rights under the Sixth, Eighth, and Fourteenth Amendments.

In its decision affirming the denial of post-conviction relief, the Pennsylvania Supreme Court agreed with the PCRA court that the remarks "were not inflammatory, did not prejudice [Saranchak], and the claim was without arguable merit."  *Saranchak-5*, 866 A.2d at 307.  The court further concluded that Saranchak failed to establish arguable merit because the statements "would not have the 'unavoidable effect' of

forming in the jury's mind a 'fixed bias and hostility' such that the jury could not 'weigh the evidence objectively and render a true verdict' as is required to establish reversible error." *Id.* (citing *Commonwealth v. Fisher*, 813 A.2d 761, 768 (Pa. 2002)). The court also reasoned, "The jury was well-aware of the fact that [Saranchak] had been convicted of two counts of murder in the first degree and the other charges and of the details of the crimes." *Id.* As a result, the court denied the underlying prosecutorial misconduct claim, concluding that "[i]n light of the other evidence in the case, we conclude that the prosecutor's argument did not have the unavoidable effect of prejudicing the jury." *Id.*

The state courts considered and rejected the underlying claim of prosecutorial misconduct on the merits applying Pennsylvania law. Assuming, however, that Saranchak was presenting a federal constitutional claim, and based on review of the record, the court concludes that the state courts' determination regarding this issue is consistent with federal prosecutorial misconduct law and is based upon a reasonable determination of the relevant facts.[21] *See* 28 U.S.C. § 2254(d)(1)-(2). Taken in

---

[21] It has been held that the standard for prosecutorial misconduct applied by the Pennsylvania courts is consistent with established federal law; therefore, the court may apply the AEDPA inquiry of whether the state court decision was contrary to or involved an unreasonable application of, clearly established federal law. *See Henry v. Horn*, 218 F. Supp. 2d 671, 704-05 (E.D. Pa. 2002) (finding Pennsylvania standards addressing prosecutorial misconduct are not contrary to the comparable federal standards); *Martinez v. Shannon*, Civ. No. 06-2657, 2007 WL

context and viewed as a whole, and being mindful that counsel's comments are given less weight than a trial court's instructions and the fact that the jury was aware of Saranchak's convictions, the court finds the prosecutor's statements did not likely impede the jury's ability to judge the evidence fairly. *See Darden*, 477 U.S. at 181; *Boyd*, 494 U.S. at 384. Further, the court finds that these statements did not "infect[ ] the trial with unfairness" to such an extent that Saranchak was denied due process of law. *See id.* As a result, this claim does not warrant habeas relief. As the court has determined that Saranchak's claim with respect to prosecutorial misconduct during the penalty phase is meritless, his ineffective assistance of counsel claim also fails. *See Strickland*, 466 U.S. at 691.

### I.  <u>Claim XI - Cumulative Prejudice</u>

Saranchak argues that, even if he is not entitled to relief on any particular claim, the cumulative effect of all the errors alleged in his petition denied him a fair trial. The Third Circuit has established that "[i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)

---

2702644, at *15 (E.D. Pa. June 28, 2007); *Fahy v. Horn*, No. Civ.A. 99-5086, 2003 WL 22017231, at *50 (E.D. Pa. Aug. 26, 2003), *overruled on other grounds by*, 516 F.3d 169 (3d Cir. 2008).

(quoting *Albrecht v. Horn*, 471 F.3d 435, 468 (3d Cir. 2006)).  *See also Marshall v.*

*Hendricks*, 307 F.3d 36, 94 (3d Cir. 2002) (finding that certain errors, harmless when

viewed individually, may be so prejudicial when taken cumulatively as to warrant a

new trial) (citing *United States ex rel. Sullivan v. Cuyler*, 631 F.2d 14, 17 (3d Cir.

1980)).  Cumulative errors will only be deemed not harmless where "they had a

substantial and injurious effect or influence in determining the jury's verdict, which

means that a habeas petitioner is not entitled to relief based on cumulative errors

unless he can establish 'actual prejudice.'" *Fahy*, 516 F.3d at 205 (internal citation

omitted); *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  To demonstrate

"actual prejudice", Saranchak must show that the errors during his trial created more

than a possibility of prejudice; he must show that the errors "worked to his actual and

substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986).

Here, Saranchak has failed to demonstrate any such cumulative prejudicial

effect.  This court, as well as the Third Circuit Court of Appeals as to Claims I, II, and

III, has found all of Saranchak's claims relating to both the guilt phase and the

sentencing phase to be meritless.  Even considering cumulatively the few instances of

harmless error identified by Saranchak and recognized by the court, their overall

effect is not so prejudicial to the fairness of the proceedings as to warrant a new trial.

*See generally Marshall*, 307 F.3d at 94.  Therefore, this claim will be denied.


## IV.    <u>Conclusion</u>

Based on the foregoing, the court will deny Saranchak's petition for writ of

habeas corpus.  Pursuant to Local Appellate Rule 22.2 of the Rules of the United

States Court of Appeals for the Third Circuit, at the time a final order denying a

petition under 28 U.S.C. § 2254, the district court must make a determination as to

whether a certificate of appealability should issue.  3d.Cir. L.A.R. 22.2.  A certificate

of appealability should issue "only if the applicant has made a substantial showing of

the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To meet this burden a

petitioner must show "that reasonable jurists could debate whether (or, for that matter,

agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further."  *Slack*

*v. McDaniel*, 529 U.S. 473, 484-5 (2000) (internal citations and quotations omitted).

In the present matter, the court concludes that reasonable jurists may debate whether

the court properly resolved the issues of whether Saranchak was denied effective

assistance of counsel at his capital sentencing (Claim V), and whether the trial court

failed to instruct the jury on the mitigating circumstance of extreme mental or emotional disturbance and counsel's failure to object (Claim VII).  The certificate of appealability will be denied in all other respects.

An appropriate order will issue.

                                     s/Sylvia H. Rambo
                                     United States District Judge

Dated:  April 24, 2012.

81

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL SARANCHAK,** | : | **CIVIL NO. 1:05-CV-0317** |
| | : | |
| **Petitioner** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, Commissioner,** | : | **THIS IS A CAPITAL CASE** |
| **Pennsylvania Department** | : | |
| **of Corrections;** | : | |
| **DAVID DiGUGLIELMO,** | : | |
| **Superintendent of the State** | : | |
| **Correctional Institution at** | : | |
| **Graterford; and FRANK TENNIS,** | : | |
| **Superintendent of** | : | |
| **the State Correctional Institution** | : | |
| **at Rockview,** | : | |
| | : | |
| **Respondents** | : | |

# O R D E R

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) The petition for writ of habeas corpus (Doc. 7) is **DENIED**.

2) A certificate of appealability shall issue only on the issues of whether

Saranchak was denied effective assistance of counsel at his capital sentencing (Claim

V), and whether the trial court failed to instruct the jury on the mitigating

circumstance of extreme mental or emotional disturbance and counsel's failure to

object (Claim VII).  *See* 28 U.S.C. § 2253(c).

3) The Clerk of Court is directed to **CLOSE** this case.


                    s/Sylvia H. Rambo
                    United States District Judge

Dated:  April 24, 2012.

2